# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BAI HAIYAN, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:10-cv-767 (VLB) |
| HAMDEN PUBLIC SCHOOLS, ET AL., | : | |
| Defendants. | : | July 15, 2011 |

## MEMORANDUM OF DECISION GRANTING DEFENDANT THE COLLEGE BOARD'S MOTION TO DISMISS [Doc. #23] AND GRANTING IN PART AND DENYING IN PART DEFENDANTS FRANCES RABINOWITZ, HAMLET HERNANDEZ AND KAROLYN RODRIGUEZ'S MOTION TO DISMISS [Doc. #24]

The plaintiff, Bai Haiyan ("Haiyan"), brings this action alleging that the College Board, Hamden Public Schools, Frances Rabinowitz, Hamlet Hernandez, and Karolyn Rodriguez[1] (collectively, the "Defendants") conspired to terminate her employment in violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment, the First Amendment, and 42 U.S.C. § 1981. She further asserts claims for breach of contract, violation of Title VII of the Civil Rights Act of 1964 against Hamden Public Schools, tortious interference with contractual relations against the individual defendants and the College Board, and promissory estoppel against the College Board. The College Board and the individual defendants separately move to dismiss all constitutional claims against them, the 42 U.S.C. § 1981 claim, and the tortious interference with contractual relations claim[2] for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6)

---

[1] Rabinowitz, Hernandez, and Rodriguez are hereinafter collectively referred to as the "individual defendants." Haiyan asserts her constitutional claims against the individual defendants in their personal capacities only.

[2] The individual defendants move to dismiss this claim only as against Karolyn Rodriguez.

of the Federal Rules of Civil Procedure.  [Doc. ##23, 24].  For the reasons explained hereafter, the College Board's motion to dismiss is GRANTED, and the individual defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.

## I. STATEMENT OF FACTS

Haiyan's amended complaint alleges the following facts.  Haiyan is a citizen of the People's Republic of China, where she was employed as a university professor of English.  Am. Compl. ¶ 2.  In or about May 2009, Hamden Public Schools ("HPS") entered an agreement with the College Board, a New York corporation, whereby the College Board agreed to assist HPS in obtaining a Chinese language teacher from the People's Republic of China through the College Board's Chinese Guest Teacher Program.  *Id.* ¶ 10.  Pursuant to this agreement, the College Board undertook the responsibility of screening, supervising and evaluating Chinese language teachers on behalf of HPS and HPS assumed the obligation of hiring a Chinese language teacher from the People's Republic of China for the 2009-2010 school year.  *Id.* ¶¶ 11, 13; Def. Exh. B [Doc. #25-2].  Haiyan further alleges that HPS agreed that it would not terminate the employment of the Chinese Guest Teacher without just cause.  *Id.* ¶ 12.

On or about May 29, 2009, Haiyan entered into a written contract of employment with HPS, whereby she was to teach Chinese language classes at Hamden High School for a term of one-school year, beginning August 24, 2009 and ending June 15, 2010.  *Id.* ¶ 14.  Under the terms of the contract, HPS promised to pay Haiyan a salary of $26,967, a housing benefit of $8,500 and a transportation benefit of $1,000.  *Id.* ¶ 15; Def. Exh. A [Doc. #25-1].  HPS also promised to act as Haiyan's employer so that she would be eligible to obtain a J-1 visa, which would

2

permit her to lawfully enter and teach in the United States. *Id.* ¶ 16. Subsequently, on July 21, 2009, Haiyan traveled to the United States to begin teaching Chinese language classes at Hamden High School. *Id.* ¶ 18.

During September and October of 2009, Haiyan wrote to several administrators in the Hamden School system concerning a dispute with regard to her pay, resulting in Haiyan retaining counsel in an attempt to resolve the issue. *Id.* ¶¶ 48–51. Specifically, Haiyan alleges that she was not given her first paycheck until three weeks after she began working for HPS, and that she was being paid less than other first-year teachers at HPS and could not afford food or clothing. *Id.* After retaining counsel, she contacted the College Board regarding her pay dispute. The College Board notified her that all pay concerns with HPS should be addressed through the College Board and that retaining counsel sent an "unfriendly message" to HPS. *Id.* ¶¶ 52–53, 56. Requests for a written explanation as to why Haiyan was not being paid commensurate with similarly situated first-year teachers as well as a second letter to defendant Frances Rabinowitz ("Rabinowitz"), superintendent of HPS, requesting a resolution of the pay dispute received no response. *Id.* ¶¶ 54, 58.

Haiyan alleges that, due to this unresolved pay dispute and her decision to retain counsel, the Defendants conspired to terminate her participation in the Chinese Guest Teacher Program by making false findings of facts against her. *Id.* ¶¶ 59–60. Specifically, Haiyan contends that her teaching contract with HPS was terminated in December 2009 after Karolyn Rodriguez ("Rodriguez"), chair of HPS's world language department, at the behest and direction of Rabinowitz and Hamlet Hernandez ("Hernandez"), assistant superintendent of HPS, procured a false statement from Li Li, another Chinese guest teacher who was living in the same

apartment with Haiyan, asserting that Haiyan had attacked her a domestic dispute at their residence. *Id.* These findings, which Haiyan alleges were a mere pretext, were communicated to the College Board, which acquiesced in HPS's decision to terminate Haiyan's employment. *Id.* ¶¶ 61–62, 65. These findings were also communicated to education authorities in the People's Republic of China. *Id.* ¶ 62.

Haiyan alleges that the conspiracy was furthered by Hernandez, who on December 22, 2009 ordered Haiyan to vacate her apartment in Hamden and to not return to HPS. *Id.* ¶ 64. As a result of her termination, Haiyan alleges that the College Board took action that caused her J-1 visa to be revoked and for agents of the Chinese government to order her immediate return to the People's Republic of China. *Id.* ¶ 67–68. On January 12, 2010, the Hamden Board of Education adopted the decision of Rabinowitz and Hernandez to terminate Haiyan's employment, refusing to consider an appeal by Haiyan for a hearing regarding her termination. *Id.* ¶ 70.

Additionally, Haiyan alleges that she was intentionally treated differently than similarly situated first-year teachers who were not foreign nationals. *Id.* ¶ 47. Haiyan alleges that she was treated differently due to HPS's failure to pay her full salary in pro-rata bi-weekly installments, HPS's attempt to deduct from her salary the cost of meals it provided to her at the school cafeteria, HPS's requirement that she sign a 12-month lease for an apartment selected by HPS in which she was required to live, and the requirement that she accept utility services at her apartment selected by HPS, the cost of which were deducted from her pay. *Id.*

## II. STANDARD OF REVIEW

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a

'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (internal quotations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 129 S.Ct. at 1949-50). "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 129 S.Ct. at 1950). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S.Ct. at 1949 (internal quotation marks omitted).

### III. DISCUSSION

#### A. Claims Against the College Board

##### 1. Due Process and Equal Protection Claims

In Count One of her amended complaint, Haiyan alleges that the Defendants' conduct deprived her of liberty and property without due process of law in violation of the Due Process Clause of the Fourteenth Amendment, as enforced by 42. U.S.C. § 1983. Count Three alleges that the Defendants violated the Equal Protection Clause of the Fourteenth Amendment, as enforced by 42 U.S.C. § 1983, by unlawfully discriminating against her on the basis of her status as a foreign national. Count Three further alleges that the Defendants violated 42 U.S.C. § 1985, which prohibits, *inter alia*, conspiracies to deprive persons of the equal protection of the law or of equal privileges or immunities under the law.

Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). "In order to state a claim under § 1983, a plaintiff must allege that [s]he was injured by either a state actor or a private party acting under color of state law." *Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002). Haiyan does not allege that the College Board is a state actor; instead, she asserts

that the College Board is a New York corporation.  Therefore, the College Board cannot be held liable under Section 1983 unless it engaged in conduct that can be characterized as state action or it acted in concert with a state actor to violate Haiyan's constitutional rights.

"In order to satisfy the state action requirement where the defendant is a private entity, the allegedly unconstitutional conduct must be 'fairly attributable' to the state."  *Tancredi v. Met. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003).  "Conduct that is ostensibly private can be fairly attributed to the state only if there is 'such a close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'"  *Id.* (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)).  Thus, "[s]tate action may properly be found where the state exercises coercive power over, is entwined in [the] management or control of, or provides significant encouragement, either overt or covert to, a private actor, or where the private actor operates as a willful participant in joint activity with the State or its agents, is controlled by an agency of the State, has been delegated a public function by the state, or is entwined with governmental policies."  *Id.* (internal quotation marks omitted).

Here, the amended complaint does not allege and Haiyan does not argue that the College Board's allegedly unconstitutional conduct was "fairly attributable" to the State.  Instead, she argues that the College Board should be held liable under Section 1983 because it engaged in a conspiracy with HPS and its employees to deprive her of her constitutional rights.  "To state a claim against a private entity on a section 1983 conspiracy theory, the complaint must allege facts demonstrating

that the private entity acted in concert with the state actor to commit an unconstitutional act." *Ciambriello*, 292 F.3d at 324. "Put differently, a private actor acts under color of state law when the private actor 'is a willful participant in joint activity with the State or its agents." *Id.* (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)).

In order to survive a motion to dismiss on a Section 1983 conspiracy claim, a plaintiff must allege "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Id.* at 324-25. As the Second Circuit explained in *Ciambriello*, "complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Id.* at 325 (citation omitted).

Haiyan has failed to allege sufficient facts to state a plausible Section 1983 conspiracy claim against the College Board. Instead, her amended complaint consists of "conclusory, vague, or general allegations" that the College Board conspired with HPS and its employees to terminate her employment with HPS. *Id.* For instance, Haiyan alleges that Rabinowitz and Hernandez "conspired with the College Board" and Rodriguez "to take actions to terminate [her] employment with [HPS], and to terminate [her] participation in the Chinese Guest Teacher Program, because [she] had hired legal counsel to assist her with a pay dispute she was having with HPS." Am. Compl. ¶ 20. This bare allegation is devoid of any specific

facts regarding the alleged conspiracy and the College Board's involvement in that conspiracy, and therefore cannot support liability under Section 1983.

Moreover, Haiyan's claim that the College Board conspired with HPS and its employees to deprive her of her constitutional rights is implausible based upon certain specific facts which are actually asserted in Haiyan's amended complaint. Haiyan alleges that, on December 21, 2009, HPS and the individual defendants terminated her teaching contract after procuring a false statement and making false findings of fact regarding her alleged assault of Li Li, and that the findings of fact were then communicated to the College Board. *See* Am. Compl. ¶¶ 21-24. These allegations suggest that the College Board was not involved in the decision to terminate Haiyan's employment; instead, HPS merely communicated its decision to terminate Haiyan to the College Board, along with the basis for that decision, after the fact. Haiyan also asserts that the College Board "amended" its May 2009 agreement with HPS "to permit HPS to terminate [her] employment." Am. Compl. ¶. However, by its terms the May 2009 agreement already permitted HPS to terminate its agreement with the College Board upon "misconduct of Chinese Guest Teacher or violation of federal, state or local laws[.]" [Doc. #25-2] ¶ 8.2.4.[3]

Finally, Haiyan alleges that the College Board "took action to cause [her] J-1 visa to be revoked," and "to cause the Chinese government to order [her] immediate return to the People's Republic of China." Am. Compl. ¶¶ 30-31. Although it is unclear precisely what Haiyan means when she states vaguely that the College Board "took action" to cause her J-1 visa to be revoked and subject her to

---

[3] The Court may consider documents "incorporated by reference in the complaint" in deciding a motion to dismiss for failure to state a claim. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

deportation back to China, the only plausible inference is that the College Board notified immigration officials in the United States and China that Haiyan was no longer employed as a full-time exchange teacher for HPS, a prerequisite to her J-1 visa status. *See* 8 U.S.C. § 1101(a)(15)(J) (permitting aliens to gain temporary admission to the United States as a participant in a program designated by the Director of the United States Information Agency, for the purpose of, *inter alia*, teaching, instructing or lecturing); 22 C.F.R. § 62.24(c) (setting forth eligibility requirements for foreign nationals to participate in an exchange visitor program as a full-time teacher in primary and secondary accredited educational institutions). However, notifying immigration officials that an exchange teacher has been terminated from the exchange visitor program in which she was participating is not an unconstitutional act. To the contrary, federal regulations require the sponsor of an exchange visitor to notify the Department of State in writing when the exchange visitor has been terminated from its program. 22 C.F.R. § 62.13(c)(2).

Because the College Board is not a state actor, and Haiyan has not alleged sufficient facts to support the conclusion that it acted under color of state law, Haiyan's Section 1983 claims against the College Board must be dismissed.

Haiyan also alleges that the College Board violated Section 1985 by conspiring to deprive her of equal protection of the law or of equal privileges or immunities under the law. *See* 42 U.S.C. § 1985(3). "A conspiracy claim under 42 U.S.C. § 1985(3) has four elements: (1) a conspiracy, (2) for the purpose of depriving any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws, (3) an act in furtherance of the conspiracy, and (4) whereby a person is injured in his person or property or

deprived of a right or privilege of a citizen." *Iqbal v. Hasty*, 490 F.3d 143, 176 (2d Cir. 2007). "In addition, the conspiracy must be motivated by some class-based animus." *Id.* Section 1985 contains no requirement of state action and thus applies to private conspiracies. *Griffen v. Breckenridge*, 402 U.S. 88, 101 (1971).

Haiyan fails to allege a plausible Section 1985 conspiracy claim against the College Board. As discussed above, to support a conspiracy claim a plaintiff must assert "specific instances of misconduct;" "conclusory, vague, or general allegations" of conspiracy are properly dismissed. *Ciambriello*, 292 F.3d at 325. Here, Haiyan's conspiracy claims against the College Board are not supported by specific facts evidencing a meeting of the minds or other concerted action that the College Board participated in to deprive Haiyan of equal protection of the laws or of equal privileges or immunities under the laws on the basis of discriminatory animus. *See Burke v. APT Foundation*, 509 F. Supp. 2d 169, 175 (D. Conn. 2007) (dismissing conspiracy claim where plaintiff provided no information that would suggest a meeting of the minds or other concerted action to deprive him of equal protection on the basis of racial animus). Accordingly, Counts One and Three are dismissed as against the College Board.

### 2. First Amendment Retaliation

In Count Five, Haiyan alleges that the conduct of the Defendants violated the First Amendment as enforced through 42 U.S.C. §§ 1983, 1988 and Connecticut General Statutes § 31-51q. First Amendment retaliation claims are analyzed under the framework adopted by the Supreme Court in *Connick v. Myers*, 461 U.S. 138 (1983) and *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968). In *Connick*, the Supreme Court held that a public employee must show that he spoke "as a citizen upon

matters of public concern" rather than "as an employee upon matters of personal interest" in order to establish a claim for First Amendment retaliation.  461 U.S. at 147.  In *Pickering*, the Supreme Court held that a court addressing a claim of First Amendment retaliation must balance "the interests of the [employee], as a citizen, in commenting on matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."  391 U.S. at 569.

A public employee who alleges First Amendment retaliation must prove the following elements:  "(1) the speech at issue was made as a citizen on matters of public concern rather than as an employee on matters of personal interest; (2) he or she suffered an adverse employment action; and (3) the speech was at least a substantial or motivating factor in the adverse employment action."  *Everitt v. DeMarco*, 704 F. Supp. 2d 122, 129 (D. Conn. 2010) (quoting *Johnson v. Ganim*, 342 F.3d 105, 112 (2d Cir. 2003)).

Section 31-51q of the Connecticut General Statutes protects employees from retaliatory action based upon their exercise of certain enumerated rights, including, *inter alia*, the right to freedom of expression as guaranteed by the First Amendment to the United States Constitution and Article First, § 4, of the Connecticut Constitution.  *Daley v. Aetna Life and Cas. Co.*, 249 Conn. 766, 778 (1999).  The Connecticut Supreme Court applies the *Connick* public concern analysis in determining whether an employer has violated Section 31-51q.  *Id.* at 778-82.  Thus, statements by employees that address personal matters rather than matters of public concern are not protected by Section 31-51q.  *Id.*

The College Board first argues that it cannot be held liable under Section 1983 or Section 31-51q because Haiyan was employed by HPS, and HPS made the decision to terminate her employment.  In response, Haiyan argues that, even though the College Board was not her employer, it is nevertheless liable because it conspired with HPS and its employees to terminate her employment in retaliation for exercising her First Amendment rights.  However, as explained above, Haiyan's conspiracy claim is conclusory and cannot survive a motion to dismiss.  Haiyan merely alleges that the College Board conspired with Rabinowitz, Hernandez and Rodriguez "to take actions to terminate [her] employment with [HPS], and to terminate [her] participation in the Chinese Guest Teacher Program, because [she] had hired legal counsel to assist her with a pay dispute she was having with HPS." Am. Compl. ¶ 20.  She fails to allege specific facts which would suggest that the College Board participated in concerted action with HPS and its employees to terminate her employment in retaliation for complaining about her pay.  Therefore, her retaliation claim against the College Board fails.

The College Board further argues that Haiyan's retaliation claim must be dismissed because her pay dispute with HPS was a purely personal grievance rather than a matter of public concern.  Speech that addresses a matter of public concern involves statements that can "fairly be characterized as relating to any matter of political, social, or other concern to the community[.]"  *Connick*, 461 U.S. at 146.  "Whether an employee's speech addresses a matter of public concern is a question of law for the court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record."  *Lewis v. Cowen,* 165 F.3d 154, 163 (2d Cir. 1999).  In reaching this decision, the Court must examine the

motive of the speaker "to determine whether the speech was calculated to redress personal grievances or whether it had a broader public purpose." *Id.* at 163-64.

Haiyan argues that her speech addressed a matter of public concern because it involved "complaints made to members of the public that the school system was discriminating against Chinese Guest Teachers generally." [Doc. #30] at 15. Although discrimination in a government workplace is a matter of public concern, *Cotalero v. Village of Sleepy Hollow Police Dep't*, 460 F.3d 247, 252 (2d Cir. 2006), in this case Haiyan's argument is unsupported by the factual allegations contained in the amended complaint. Haiyan alleges that, during September and October of 2009, she wrote to several administrators in the Hamden School system complaining that she was not given her first paycheck until three weeks after she began working for HPS, and that she was being paid less than other first-year teachers and could not afford food and clothing. Am. Compl. ¶¶ 48-51. She then retained counsel to assist her in addressing the issue, who wrote two letters to Rabinowitz on her behalf stating that she should be paid commensurate with other teachers and seeking a resolution of the "pay dispute." *Id.* ¶¶ 51, 58. Haiyan also contacted the College Board regarding her "pay dispute," which attempted to intervene with HPS on her behalf. *Id.* ¶¶ 53-57.

Thus, based upon Haiyan's own allegations, it is clear that her complaints to HPS administrators and her retention of an attorney to assert her in that regard was calculated to redress her personal grievance with HPS regarding her pay. Nowhere in her amended complaint does she assert facts indicating that she made an effort to raise questions regarding discrimination in the Hamden Public School system generally. *See Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 143 (2d Cir. 1993)

(finding that employee's complaints of sex discrimination did not implicate matters of public concern because they "were motivated by and dealt with her individual employment situation"); *Bates v. Bigger*, 56 Fed. Appx. 527, 530 (2d Cir. 2002) ("Individual complaints of discrimination, which do not allege system-wide discrimination, do not involve matters of public concern.").  Haiyan's amended complaint is similarly devoid of any facts suggesting that she ever informed the College Board, members of the public, or anyone else that she was being discriminated against on the basis of her race or alienage.

Finally, the mere fact that Haiyan hired an attorney to assist her in redressing her grievance does not give rise to a First Amendment retaliation claim.  As the Supreme Court recently made clear, a government employee cannot assert a retaliation claim under the Petition Clause of the First Amendment unless the underlying issue on which she petitions the government is a matter of public concern.  *See Borough of Duryea, Pa. v. Guarnieri*, - S.Ct. -, 2011 WL 2437008, at *13 (2011).  Thus, Haiyan's retention of an attorney to communicate with HPS on her behalf was not protected by the First Amendment because, as explained previously, her underlying grievance involved a matter of purely private concern.  *See id.* ("If a public employee petitions as an employee on a matter of purely private concern, the employee's First Amendment interest must give way, as it does in speech cases.").  Therefore, Haiyan's retaliation claim against the College Board contained in Count Five must be dismissed.

### 3.  Section 1981 claim

In Count Six, Haiyan alleges that the Defendants violated 42 U.S.C. § 1981 as well as Connecticut General Statute 46a-58 and 46a-100,[4] by discriminating against her on basis of alienage in the formation and enforcement of an employment contract.  Section 1981 prohibits discrimination in, *inter alia*, the making and enforcing of contracts, and extends to private as well as state actors.  42 U.S.C. § 1981; *see also Anderson v. Conboy*, 156 F.3d 167, 170 (2d Cir. 1998) ("It is established that Section 1981 prohibits discrimination based on race in the making and enforcement of contracts, and extends to private as well as state actors in that regard.") (citations omitted).  The statute defines the phrase "make and enforce contracts" to include the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  *Id.*

"To establish a claim under § 1981, a plaintiff must allege facts in support of the following elements:  (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)."  *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993).  The Second Circuit has interpreted Section 1981, in light of its language and legislative history, to apply to racial and ethnic discrimination as well as discrimination based upon alienage.  *See Anderson*, 156 F.3d at 170.

---

[4] Connecticut reviews federal precedent concerning employment discrimination for guidance in enforcing its own anti-discrimination statutes. *See Levy v. Commission of Human Rights and Opportunities*, 236 Conn. 96, 103 (1996).

The College Board argues that it cannot be held liable under Section 1981 because Haiyan has not alleged any specific facts demonstrating that the College Board discriminated against her on the basis of her alienage.  The Court agrees.  Haiyan's amended complaint contains only vague and conclusory allegations that the College Board participated in a conspiracy with HPS and its employees to terminate Haiyan's employment and to have her deported; she alleges no specific discriminatory actions taken by the College Board and no facts giving rise to an inference of purposeful discrimination on the part of the College Board.

The facts alleged establish that the College Board specifically sought out individuals from China to participate in the Chinese Guest Teacher Program at HPS.  While employed as a Chinese Guest Teacher for HPS, Haiyan complained to HPS regarding her pay; there is no indication that she asserted that she was being discriminated against on the basis of race, alienage, or any other protected status.  Ultimately, HPS terminated Haiyan's employment based on a statement by Li Li, a fellow Chinese Guest Teacher, that Haiyan had assaulted her.  Haiyan claims that the statement is false, and that it was intentionally procured by HPS employees as a pretext to terminate her employment in retaliation for exercising her First Amendment rights.  However, there are insufficient facts alleged to support an inference that the College Board played any role in procuring the allegedly false statement or in the termination decision; instead, Haiyan alleges that the College Board was notified after the fact.  Once Haiyan was terminated from HPS, by law her eligibility for a J-1 visa expired.  *See* 8 U.S.C. § 1101(a)(15)(J); 22 C.F.R. § 62.24(c).  The College Board then notified immigration officials that Haiyan's employment with HPS and therefore her participation in the Chinese Guest Teacher program had been

terminated, as it was required to do by federal regulation.  *See* 22 C.F.R. §

62.13(c)(2).  Contrary to Haiyan's argument, there is nothing in these factual

allegations that gives rise to an inference that the College Board purposefully

discriminated against her on the basis of her alienage.  Accordingly, Count Six is

dismissed as against the College Board.

### B. Claims Against the Individual Defendants

### 1. Qualified Immunity

The individual defendants argue that they are entitled to qualified immunity

with respect to all of the constitutional claims asserted against them.  The doctrine

of qualified immunity shields government officials performing a discretionary

function "from liability for civil damages insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person

would have known."  *Harlow v. Fitzerald*, 457 U.S. 800, 818 (1982).  The Court must

engage in a two-part inquiry to determine an official's entitlement to governmental

immunity:  whether the facts shown "make out a violation of a constitutional right,"

and "whether the right was clearly established at the time of [the] defendant's

alleged misconduct."  *Pearson v. Callahan*, 129 S.Ct. 808, 815-16 (2009).  Courts are

permitted to exercise their discretion in determining which of the two prongs should

be addressed first.  *Id.*  To be clearly established, "[t]he contours of the right must

be sufficiently clear that a reasonable official would understand that what he is

doing violates that right."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

### a. Due Process – Property Interest

In Count One, Haiyan alleges that the Defendants violated the Due Process

Clause of the Fourteenth Amendment, as enforced by 42 U.S.C. § 1983, by

terminating her employment without notice and an opportunity to be heard.  The threshold inquiry in analyzing a procedural due process claim is whether the plaintiff has a property or liberty interest protected by the Constitution.  *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972).  If a protected interest is identified, the Court must consider whether the government deprived the plaintiff of that interest without due process.  *Narumanchi v. Board of Trustees of Connecticut State University*, 850 F.2d 70, 72 (2d Cir. 1988).  The Court is then required to determine what process was due and whether the constitutional minimum was provided by the government.  *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).

While the Constitution protects property interests, it does not create them. *Jackson v. Roslyn Board of Education*, 652 F. Supp. 2d 332, 339 (2009).  "Property interests are created, and their dimensions are clarified by existing rules or understandings that stem from an independent source such as state law rules or understandings that secure certain benefits and that support claims of entitlements to those benefits."  *Roth*, 406 U.S. at 577.

When a property interest relates to employment, the Court will look to the relevant law, contract or regulation governing the employment to determine whether a property interest is protected by the Fourteenth Amendment.  *Ciambriello v. County of Nassau*, 292 F.3d 307, 314 (2d Cir. 2002).  However, not every contractual benefit rises to the level of a constitutionally protected property interest.  *Ezekwo v. N.Y. City Health & Hops. Corp.*, 940 F.2d 755, 782 (2d Cir. 1991).  "In the employment context, a property interest arises only where the state is barred whether by statute or contract, from terminating (or not renewing) the employment relationship *without cause.*"  *Taravella v. Town of Wolcott*, 599 F.3d 129, 134 (2d Cir. 2010) (quoting *S&D*

*Maintenance Co. v. Goldin*, 844 F.2d 962, 967 (2d Cir. 1988)). Under Connecticut law, employment at-will is the default rule, and parties must specifically contract a commitment to be terminated only for just cause. *See Torosyan v. Boehringer Ingelheim Pharms., Inc.*, 234 Conn. 1, 14-15 (1995). An exception exists, however, for contracts that create employment for a fixed duration. *See Slifkin v. Condec Corp.*, 13 Conn. App. 538 (1988). "An employment contract for a definite or determinable term . . . may be terminated by either party only for good or just cause." *Id.* at 549.

An employee who possesses a property right in continued employment must be afforded a pre-termination opportunity to respond to the charges against her coupled with a post-termination administrative procedure. *See Cleveland Board of Educ. v. Loudermill*, 470 U.S. 532, 547-48 (1985).

The Court finds that Haiyan has stated a claim for violation of due process, and that the individual defendants are not entitled to qualified immunity. Haiyan alleges that she was hired for a fixed term of one school year, and her contract of employment with HPS expressly provided that her period of employment would be from August 24, 2009 to June 15, 2010. Def. Exh. A, [Doc. #25-1]. Therefore, under Connecticut law she could only be terminated for just cause. *Slifkin*, 13 Conn. App. at 549. It is clearly established that a public employee who can be only be terminated for cause has a property interest in continued employment. *Taravella*, 599 F.3d at 134. Haiyan further alleges that she was not afforded pre-termination notice and an opportunity to be heard or a post-termination hearing, as is required if an employee with a property right in continued employment is terminated. *Loudermill*, 470 U.S. at 547-48.

The individual defendants argue that their conduct in terminating Haiyan was objectively reasonable because the memorandum of understanding between HPS and the College Board, which set forth the terms of the Chinese Guest Teacher program, provided that HPS could withdraw from the program on sixty days written notice and that the College Board could terminate the agreement in the event of the early departure of a guest teacher. Thus, they claim, it was reasonable for them to believe that she did not have a property interest in her employment. In making this argument, the individual defendants rely upon *Taravella v. Town of Wolcott*, a case in which the Second Circuit granted qualified immunity to a mayor who had terminated a town employee without a hearing where her employment agreement was ambiguous as to whether she could be terminated without cause and the mayor read the agreement and sought legal advice prior to the termination. 599 F.3d at 135. However, *Taravella* is readily distinguishable from the case at bar.

In *Taravella*, the ambiguity as to whether the plaintiff could be terminated without cause arose from language within her employment agreement itself. *Id.* Here, by contrast, Haiyan's employment letter unambiguously states that her term of employment was to be from August 24, 2009 to June 15, 2010. Def. Exh. A, [Doc. #25-1]. The individual defendants rely upon provisions contained in the memorandum of understanding between HPS and the College Board in support of their claim that they believed that Haiyan could end her employment or be terminated before expiration of her one-year term without cause. However, Haiyan was not a party to the memorandum of understanding, nor does she allege that she was privy to the specific terms of the memorandum of understanding before accepting employment with HPS. Furthermore, there is no indication that the

21

individual defendants themselves either read the memorandum of understanding or sought legal advice with respect to whether Haiyan could be terminated without just cause before terminating her employment, as the defendant in *Taravella* did. 599 F.3d at 135. Therefore, the individual defendants are not entitled to qualified immunity with respect to Haiyan's due process claim at this stage of the litigation.

### b. Due Process – Stigma-Plus Claim

Haiyan also alleges in Count One that she was deprived of liberty without due process of law. Such a claim is termed a "stigma-plus" violation and is "brought for injury to one's reputation (the stigma) coupled with the deprivation of some 'tangible interest' or property right (the plus), without adequate process." *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003) (citation omitted).

A plaintiff must fulfill three requirements in order to establish a stigma-plus claim arising from the termination of public employment. First, the plaintiff must show that the government made statements about her that call into question her "good name, reputation, honor, or integrity" or that "denigrate [her] competence as a professional and impugn [her] professional reputation in such a fashion as to effectively put a significant roadblock on [her] continued ability to practice [her] profession." *Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004) (citations omitted). The plaintiff generally need only to raise the falsity of such stigmatizing statements as an issue, not prove that they are false. *Id.* Second, a plaintiff must prove that the stigmatizing statements were made public. *Id.* Third, a plaintiff must show that the stigmatizing statements "were made concurrently in time to [her] dismissal from government employment." *Id.* If a plaintiff successfully proves her

stigma plus claim, due process requires that she be provided a post-deprivation opportunity to clear her name as a remedy. *Id.*

The individual defendants argue that they are entitled to qualified immunity with respect to Haiyan's stigma-plus claim for three distinct reasons. First, they claim that Haiyan fails to allege that any stigmatizing statement was made public at the time of her termination. Second, they claim that, even if such a statement was made public Haiyan does not allege that it permanently deprived her of the right to pursue her teaching career. Third, they claim that Haiyan had no liberty interest because she was not a permanent HPS employee, but instead was only appointed to teach for a one-year term. Each of these arguments is unavailing.

With regard to the publication requirement, "[t]he defamatory statement must be sufficiently public to create or threaten a stigma; hence, a statement made only to the plaintiff, and only in private, ordinarily does not implicate a liberty interest." *Velez v. Levy*, 401 F.3d 75, 87 (2d Cir. 2005). In this case, the allegedly false findings regarding Haiyan's assault of Li Li were not merely communicated to Haiyan in private. Rather, Haiyan alleges that the findings were communicated to the College Board as well as to education authorities in China. Therefore, she has satisfied the publication requirement. *See, e.g.*, *Simpson v. O'Sullivan*, No. 09-cv-2334 (JS)(ETB), 2010 WL 4608741, at *2 (E.D.N.Y. Nov. 2, 2010) (plaintiff sufficiently alleged that defendant made a false public statement that injured his reputation when she falsely reported to the IRS that he failed to report income).

Next, as to the argument that Haiyan was not permanently deprived of an opportunity to pursue her teaching career, the individual defendants misapprehend Second Circuit precedent. The Second Circuit does require a plaintiff to have been

"permanently deprived" of her ability to practice her chosen profession in order to state a stigma-plus claim. Instead, as the Second Circuit made clear in *Patterson*, in order for a statement to qualify as stigmatizing, it must either call into question a plaintiff's "good name, reputation, honor, or integrity," or impugn her professional competence in such a way as to "put a significant roadblock in [her] continued ability to practice [her] profession." 370 F.3d at 330. The false statement alleged by Haiyan in this case meets this standard. Haiyan claims that the individual defendants intentionally procured a false statement from Li Li that Haiyan had assaulted her, which is a crime. It is clearly established that charges of criminal conduct qualify as stigmatizing. *See Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 446 n.4 (2d Cir. 1980); *see also Velez*, 401 F.3d at 75 (holding that "allegedly trumped-up charges of criminal behavior" are sufficient to create the requisite stigma). Furthermore, Haiyan alleges that, as a result of the false statement, her employment was terminated and she was deprived of the ability to continue teaching in the United States. She also alleges that her termination and the underlying basis for it were communicated to education authorities in China, and thus it is reasonable to infer that her ability to teach in China was impacted as well.

Finally, Haiyan need not have been a permanent public employee in order to show that her termination implicated a liberty interest. In *Donato v. Plainview-Old Bethpage Cent. School Dist.*, 96 F.3d 623, 631-33 (2d Cir. 1996), the Second Circuit held that the termination of an assistant principal during her probationary appointment period implicated a liberty interest, even though she did not have a property interest in her employment under state law as a consequence of her

24

probationary status.  *See also Pagan v. New York State Div. of Parole*, No. 98 Civ. 5840 FM, 2003 WL 22723013, at *8 (S.D.N.Y. Nov. 18, 2003) ([E]ven a probationary employee may be entitled to a due process hearing – albeit, a post-termination hearing – if he was dismissed under circumstances which stigmatize him and imperil his opportunity to secure future employment.").  Here, as discussed above, Haiyan had property interest in continued employment because her contract provided for a fixed term of employment and therefore she could only be terminated for cause.

Moreover, even if Haiyan did not have a property interest in her employment, her circumstances were sufficiently analogous to those of the probationary employee in *Donato* to render qualified immunity inappropriate.  Haiyan was appointed to a one-year term of employment at HPS as a Chinese Guest Teacher, beginning on August 24, 2009 and ending June 15, 2010.  HPS terminated her employment in December 2009, approximately seven months before her term was scheduled to end.  The individual defendants argue that Haiyan had no liberty interest because the memorandum of understanding between HPS and the College Board which governed the terms of the Chinese Guest Teacher program gave HPS the right to the withdraw from the program entirely on 60 days written notice, or to terminate a guest teacher immediately based upon misconduct or violation of the law.  *See* Def. Exh. B [Doc. #25-2], ¶¶ 8.21, 8.25.  However, *Donato* makes clear that entitlement to continued employment is not required in order to make out a stigma-plus claim.  The plaintiff in *Donato* could be terminated at any time and therefore she had no property interest in continued employment.  96 F.3d at 629.  Nevertheless, the Second Circuit held that her termination violated a liberty interest

because her employer made stigmatizing statements about her during the course of her termination that were publicly disclosed. *Id.* at 631-32. Likewise, Haiyan has alleged that her liberty interest was implicated when the individual defendants made false charges that she had engaged in criminal conduct in the course of terminating her employment. Therefore, the individual defendants are not entitled to qualified immunity.

In sum, Haiyan has adequately alleged a stigma-plus claim, and the individual defendants are not entitled to qualified immunity because the law in this area is clearly established. Haiyan asserts that the individual defendants procured a stigmatizing statement implicating her in criminal conduct that she claims is false. The statement was publicly disseminated, having been communicated to both the College Board and to education authorities in China. The statement was made in the course of and was used to justify her termination, which satisfies the "plus" requirement of a stigma-plus claim. Finally, Haiyan alleges that she was not afforded any pre-termination due process, and that the Hamden Board of Education denied her request for a post-termination hearing regarding the reasons for her termination. Therefore, the individual defendants' motion to dismiss is denied with respect to Haiyan's stigma-plus claim.

### c. Equal Protection and 42 U.S.C. § 1981

In Count Three, Haiyan asserts an employment discrimination claim under the Equal Protection Clause of the Fourteenth Amendment, as enforced by 42 U.S.C. § 1983. In Count Six, Haiyan alleges that the Defendants discriminated against her in the formation and enforcement of an employment contract in violation of 42 U.S.C. § 1981.

Discrimination claims based on race or alienage can form the basis of a Section 1983 equal protection claim or a Section 1981 claim for discrimination in the making and enforcing of a contract. *See Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004) ("Most of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also application to claims of discrimination in employment in violation of § 1981 or the Equal Protection Clause."). "Once action under color of state law is established, the analysis for such claims is similar to that used for employment discrimination claims brought under Title VII, the difference being that a § 1983 [or Section 1981] claim can be brought against individuals." *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006).

In her amended complaint, Haiyan bases her employment discrimination claims on allegations of disparate treatment. Specifically, Haiyan alleges that she was treated differently than similarly situated first-year teachers who were not foreign nationals because HPS failed to pay her full salary in pro-rata bi-weekly installments, attempted to deduct from her salary the cost of meals it provided to her at the school cafeteria, required that she sign a 12-month lease for an apartment selected by HPS in which she was required to live, and required that she accept utility services at her apartment that were selected by HPS and the cost of which were deducted from her pay. Am. Compl. ¶ 47.

Courts analyze claims of disparate treatment in employment under the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "The plaintiff must first establish a *prima facie* case by demonstrating that: (1) she is a member of a protected class; (2) her job performance was satisfactory; (3) she suffered an adverse employment action; and (4) the action

27

occurred under conditions giving rise to an inference of discrimination." *Demoret*, 451 F.3d at 151.

In order to demonstrate the fourth element of a *prima facie* case, "[a] plaintiff relying on disparate treatment evidence must show that she was similarly situated in all materials respects to the individuals with whom she seeks to compare herself." *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003). Courts have held that temporary workers and permanent employees are not similarly situated. *See Williams v. Josephs*, No. 91 CIV. 878 (MBM), 1993 WL 403969, at *3 (S.D.N.Y. 1993) ("A temporary worker at a government agency and a full-time civil service employee are not similarly situated."); *Uniformed Firefighters Ass'n v. City of New York*, 512 F. Supp. 292 (S.D.N.Y. 1981) ("temporary appointments or provisional employments are entitled to the emoluments of temporary appointees, they do not become temporaries with the attributes of permanent employees").

Even accepting all of the allegations in the amended complaint as true, Haiyan cannot show that she was similarly situated to other first-year teachers at HPS. Haiyan's appointment to teach Chinese at HPS was based upon her participation in a Guest Teacher Program arranged through a private entity, the College Board. Unlike other first-year teachers, Haiyan held a temporary assignment of one year, was not a member of the collective bargaining unit, and was not certified to teach in the State of Connecticut. The terms and conditions of Haiyan's employment were set in accordance with an agreement between HPS and the College Board. Pursuant to her employment contract with HPS, HPS arranged for Haiyan's housing and utilities, which was not done for other first-year teachers.

Therefore, Haiyan's circumstances were not comparable to those of other first-year teachers at HPS which whom she seeks to compare herself.

Indeed, in her opposition to the individual defendants' motion to dismiss Haiyan does not even attempt to explain how she could be considered to have been similarly situated with other first-year teachers at HPS in light of the stark differences in the terms and conditions of her employment. Rather, she argues that, despite the language in her amended complaint that she was treated differently than similarly situated first-year teachers, she is actually alleging a "policy" on the part of HPS, implemented by the individual defendants, to discriminate against her solely because she was a resident alien. Therefore, Haiyan claims, she is not required to show that she was in fact treated differently than similarly situated first-year teachers who were not resident aliens.

Haiyan does not identify the purported "policy" that the individual defendants implemented, and her amended complaint makes no reference to a "policy" of discrimination. To the extent that Haiyan is attempting to argue that a plaintiff asserting an employment discrimination claim may rely upon evidence other than disparate treatment to show an inference of discriminatory intent, she is correct. *See Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009) ("It is well-settled that an inference of discriminatory intent may be derived from a variety of circumstances, including, but not limited to:  the employer's continuing, after discharging the plaintiff, to seek applicants from persons of the plaintiff's qualifications to fill that position; or the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees

not in the protected group; or the sequence of events leading to the plaintiff's discharge.") (citation and internal quotation marks omitted). However, the amended complaint is bereft of any well-pleaded factual allegations suggesting that any of the individual defendants had such an intent in this case. She does not allege that any of the individual defendants, or anyone else at HPS, ever criticized her performance in degrading terms or made any discriminatory remarks about aliens. She does not allege that HPS sought to replace her or transfer her responsibilities to a non-alien teacher after she was terminated. Nor does she allege that either she or her attorney ever complained that she was being discriminated against on the basis of her alienage at the time of the events giving rise to this lawsuit. Instead, according to allegations of the amended complaint, the individual defendants were motivated to terminate Haiyan's employment because of the complaints she made regarding her pay and the fact that she hired an attorney to assist her with her pay dispute with HPS. However, as discussed above, her speech was not protected because it did not address a matter of public concern. Haiyan's bare allegation that she was terminated "on the basis of her status as a foreign national," Am. Compl. ¶ 69, is conclusory and is not entitled to an assumption of truth. *Iqbal*, 129 S.Ct. at 1949-50. Therefore, the individual defendants are entitled to qualified immunity with respect to Haiyan's employment discrimination claims under Section 1983 and Section 1981.

### d. First Amendment Retaliation Claim

The Court has already concluded that Haiyan has not adequately pleaded a claim for First Amendment retaliation because, based upon the facts alleged in the amended complaint, her speech involved a personal grievance regarding her pay and did not address a matter of public concern. *See supra* Section II.a.2. Therefore,

the individual defendants are entitled to qualified immunity with respect to this claim.

### 2. Personal Involvement of Rodriguez

Finally, the individual defendants move to dismiss all claims against Rodriguez on the basis that Haiyan has failed to adequately plead her personal involvement in the conduct giving rise to Haiyan's claims. "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994).

Haiyan alleges the following claims against Rodriguez: violation of equal protection; violation of due process; First Amendment retaliation; violation of 42 U.S.C. § 1981; and tortious interference with contractual relations. The Court has already found that the individual defendants are entitled to qualified immunity with respect to Haiyan's claims for equal protection, First Amendment retaliation, and violation of 42 U.S.C. § 1981. As to the remaining due process and tortious interference claims, the Court holds that Haiyan has sufficiently alleged Rodriguez's personal involvement in the conduct complained of. Specifically, Haiyan alleges that Rodriguez was the chair of HPS's world language department and the person who intentionally procured the allegedly false statement from Li Li which Haiyan claims was used to justify her termination. Am. Compl. ¶ 24. This is sufficient to state a claim that Rodriguez was personally involved in the deprivation of Haiyan's rights. *See Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 123 (2d Cir. 2004) (finding that plaintiff's supervisors were personally involved in the alleged deprivation of plaintiff's rights where they provided a memo to the superintendent of

the school district which the plaintiff claimed contained false information that was used to deny her tenure).

## *IV. CONCLUSION*

Based upon the foregoing reasoning, the College Board's motion to dismiss [Doc. #23] is GRANTED, and the individual defendants' motion to dismiss [Doc. #24] is GRANTED IN PART and DENIED IN PART.  Haiyan's claims against the College Board for violation of due process (Count One), violation of equal protection (Count Three), First Amendment retaliation (Count Five), and violation of 42 U.S.C. § 1981 (Count Six) are dismissed.  In addition, the individual defendants are entitled to qualified immunity only with respect to Haiyan's claims for violation of equal protection (Count Three), First Amendment retaliation (Count Five), and violation of 42 U.S.C. § 1981 (Count Six).  All remaining claims asserted in the amended complaint will go forward.

IT IS SO ORDERED.

_____/s/_____
Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut:  July 15, 2011.